[Crim. No. 3907. First Dist., Div. One. Nov. 15, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. RALPH McGAUGHRAN, Defendant and Appellant.

Lowell H. Sucherman, under appointment by the District Court of Appeal, and Shirley, Saroyan, Cartwright & Peterson for Defendant and Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and John L. Burton, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant was found guilty by a jury of, count 1, violation of section 220, Penal Code, assault with intent to commit rape on a female under the age of 18 years, and count 2, violation of section 664, attempted rape of a female under 18 years of age. On motion of the district attorney the court dismissed count 1.[1] Defendant appeals from his conviction of count 2 and denial of his motion for new trial.

### QUESTIONS PRESENTED

1. Should the court have instructed the jury to fix the place of imprisonment?

2. Sufficiency of evidence: (a) Testimony of prosecutrix. (b) Evidence of intent to commit rape.

3. Alleged error in instructions.

4. Refusal of court to grant new trial.

### RECORD

About midnight of May 13, 1960, the prosecutrix, Donna, then 14 years of age, returned with Marilyn, defendant's niece, also 14, to defendant's house, after having been roller skating. Defendant's wife told the girls that defendant was at a nearby tavern. The two girls proceeded to a telephone booth across the street from the tavern, where the girls phoned defendant asking him to drive them home. Defendant came out of the bar with his wife's uncle, who proceeded to defendant's house, while defendant got his car, picked up the two girls and drove to Marilyn's home, where she got out. Defendant then drove near to Donna's home, parking his car a

---

[1] Defendant admitted two prior felony convictions, robbery and forgery.

little way up the street. Donna and defendant remained in the parked car for some time. Donna's father, when she had not returned home by 3 a. m., went over to defendant's house, for he had heard that Donna had been seeing defendant (a man about 48 years of age). Not finding defendant home, he went to the police station and notified the police that Donna was missing.

Donna and defendant, while in the parked car, saw the police approach her home. Donna ducked down on the seat so as not to be seen. Between 3:30 and 4:30 a. m., having seen her parents leave the house, Donna went inside. On returning home and finding Donna there, her father notified the police of her return. They came to the house to question her. She told them that she had met a sailor on the bus and gone to Dolores Park with him, and that she had had sexual intercourse with him. Shortly thereafter defendant phoned Donna's father and said, " 'I heard you have been over to my house talking to my wife. . . . Well, I want you to know that I haven't seen Donna tonight. I wasn't with Donna tonight.' " Donna was taken to the emergency hospital for a vaginal examination. The examination showed presence of spermatozoa. She was placed in juvenile hall. After telling various stories as to what happened that night, she finally implicated defendant.

At the preliminary examination and on direct examination at the trial, Donna testified that she and defendant talked for a long time, then defendant lifted her skirt, moved her underpants aside, and placed his private parts next to her private parts. She testified that her pants were wet. Obviously, this was the result of a discharge by defendant. Inspector Rosko testified that Donna, after he had checked out her story about the sailor and found it false, told him substantially the same story she told at the trial. On cross-examination she admitted that prior to the trial she had lied about the case and that theretofore she had given defense counsel a story to the effect that defendant was not involved. On redirect examination she admitted having made up stories in the past. She admitted that on the night in question she was already pregnant, not by defendant, but by a sailor.

Defendant did not testify.

1. *Place of Imprisonment.*

Section 264, Penal Code, provides that rape is punishable by imprisonment in the state prison not less than 3

years, but if the offense is under subdivision 1 of section 261 (statutory rape) the punishment may be either imprisonment in the county jail for not more than one year, or in the state prison for not more than 50 years "and in such case the jury shall recommend by their verdict whether the punishment shall be by imprisonment in the county jail or in the state prison. . . ."

Defendant contends that because section 264 requires that the place of punishment for statutory rape (violation of § 261, subd. 1) be fixed by the jury, necessarily the conviction of defendant of an attempt to violate section 261, subdivision 1, under the general attempt to commit an offense statute (§ 664), requires that the jury likewise fix the place of imprisonment.

Section 664 provides, so far as pertinent here, that an attempt to commit any crime is punishable where no other provision is made for punishment, as follows: if the offense attempted is punishable in the state prison for five years or more, or by imprisonment in a county jail, the attempt is punishable by a term not exceeding one-half of the longest term of imprisonment prescribed for the offense so attempted. There is no statement in this section that the punishment be determined by the jury.

That section 664 establishes the punishment for an attempt to commit rape is well settled. (See *People* v. *Gardner* (1893) 98 Cal. 127, 129 [32 P. 880]; *People* v. *Lanham* (1934) 137 Cal.App. 737, 739 [31 P.2d 410]; *People* v. *Lanham* (1937) 21 Cal.App.2d 410, 413-414 [69 P.2d 426].) In the first *Lanham* case the defendant made the same contention as does defendant here. In affirming a judgment of conviction of an attempt to commit statutory rape the court pointed out (pp. 738-739) that "In the enactment of section 264, the legislature undoubtedly had in thought that in many cases prosecuted under the first subdivision of section 261, the female involved might so nearly have reached the age of maturity as to be able to give practical, though not legal, consent" and therefore "the circumstances surrounding the offense might be such as to justify the jury in modifying the sentence to be imposed by fixing the place of punishment in the county jail rather than the state penitentiary." It is said (p. 739): "Section 664 of the Penal Code is under a different title, has to do not with the actual commission of the offense of unlawful intercourse with females, but only with the attempt. No

question of consent, or seeming consent, is involved in offenses prosecuted under section 664, *supra,* or, at least, no such intention appears to have been in the mind of the legislature, when enacting the section under which the present prosecution was had.

"Again, section 664, *supra,* is general in its application and applies to all cases of attempts, while section 264, *supra,* so far as it vests power in the jury to designate the place of punishment, is specifically limited to cases of actual rape prosecuted under subdivision 1 of section 261."

Later, Lanham, in *People* v. *Lanham, supra* (1937) 21 Cal.App.2d 410, appealed from the denial of his motion to set aside the judgment of conviction, one of which grounds was that the court was without jurisdiction to pronounce sentence because the jury failed to determine in its verdict the place of imprisonment. While there were other grounds upon which the reviewing court affirmed the action of the trial court, the defendant's contention that the jury should have fixed the place of confinement was rejected by the appellate court, stating (pp. 413-414): "The last-mentioned section [264] refers only to punishment for rape. It has no application to the offense of an *attempt* to commit that offense. The punishment for an attempt to commit rape, or of an attempt to commit any other crime, is provided for by section 664 of the Penal Code, *which gives the jury no option to determine whether the defendant shall be imprisoned in the state prison or in the county jail.*" (Last emphasis added.)

In *People* v. *Carillo,* 66 Cal.App. 146 [225 P. 475], the court was contrasting the punishment provided for a violation of section 220 (assault with intent to commit rape) with a violation of subdivision 1 of section 261 (statutory rape). In that case the court said (pp. 148-149): "It is urged that section 220 of the Penal Code is unconstitutional, for the reason that section 264 of the Penal Code allows the jury by their verdict to fix the punishment of a person convicted of an offense under subdivision 1 of section 261 of the Penal Code, but that section 220 provides punishment for assault with intent to commit rape of not less than one or more than fourteen years, and allows the jury no discretion in the matter. The point which appellant seems to attempt to make is that assault with intent to commit rape is a crime of less heinousness than rape, and yet that the punishment provided by section 220 of the Penal Code is less severe than that for rape under subdivision 1 of section 261 of the Penal Code, hence

appellant says the section under which he was convicted, to wit, section 220 of the Penal Code, is unconstitutional. The mere statement of this proposition answers itself, as the argument is clearly not directed against the constitutionality of the law, but merely to its wisdom, which, of course, is within the province of the legislature.''

Section 664 is a general section and covers all attempts to commit a crime where the penalty for attempt is not expressly provided elsewhere. The penalty for an attempt to commit statutory rape is not provided elsewhere. The section states, in effect, that the penalty for attempted statutory rape is ''a term not exceeding one-half the longest term of imprisonment *prescribed* upon a conviction of the offense so attempted . . .'' (here a violation of § 261, subd. 1, statutory rape). (Emphasis added.) The longest term prescribed by section 264 is 50 years in the state prison, or one year in the county jail. As the place of imprisonment determines the maximum term of imprisonment, section 264 provides, if there is a jury, that the jury shall fix the place of imprisonment and thereby the term of imprisonment. But section 264 further provides ''that when the defendant pleads guilty of an offense under subdivision 1 of section 261 of the Penal Code the punishment shall be in the discretion of the trial court, either by imprisonment in the county jail for not more than one year or in the State prison for not more than 50 years.'' Thus section 264 provides that it is not in all statutory rape cases that the jury fixes the place and term of confinement.

. It should be pointed out that the Legislature decided that in the case of a trial the jury should determine the term and place of imprisonment whereas on a plea of guilty the judge should make the determination. While, of course, in the case of a guilty plea there is no jury present, this fact indicates that the judge's role in determining the place of imprisonment is not entirely eliminated.

It is no more incongruous that the place and term of punishment of one convicted of an attempt to commit statutory rape is determined by the judge, whereas if he stood trial and was convicted of the rape charge that determination would be made by the jury, than to have the term and place of punishment where he pleads guilty to the rape charge fixed by the judge.

The first *Lanham* case was decided in 1934, the second in 1937, and the *Carillo* case in 1924. Although in those cases the court stated that the intent of the Legislature was to not

provide for jury determination of the place of imprisonment in attempts to commit rape or assaults to commit rape, and although the Legislature in 1952 amended section 264 concerning the punishment for rape, it did not see fit to make any changes concerning the method of determining the place of punishment for attempts to commit statutory rape. This fact is significant. Of some significance, too, is the fact that although the Legislature in 1937, long after the *Carillo* decision, amended section 220 as to the punishment for *assault* with intent to commit rape, it in no way provided for a jury determination of the place of punishment of an *assault* to commit statutory rape. It is interesting to note, too, as showing that the Legislature knowingly provides terms of imprisonment which may seem incongruous when comparing a completed offense with an attempted one, that the minimum punishment for an *assault* to commit statutory rape is one year in the state prison, whereas the punishment for a completed statutory rape may be not more than one year in the county jail.

While it is true that the circumstances in an attempt to commit statutory rape may be such that were the rape completed, a jury would fix the place of imprisonment as the county jail, nevertheless, the Legislature has clearly determined that in the one case the jury has the right of determination, while in the other case the determination is to be made by the court, just as the court must make the determination on a plea of guilty to the rape charge. The courts have no right to change the clear intent and the language of the law.

In *People* v. *Lanham, supra,* 137 Cal.App. at page 739, the court pointed out that section 664, Penal Code, is under a different title from section 264. Defendant contends that because of section 10004, Penal Code, enacted in 1941, the decisions in the *Lanham* and *Carillo* cases, *supra,* have been in effect overruled. That section provides: ''Division, chapter, article, and section headings contained herein shall not be deemed to govern, limit, modify or in any manner affect the scope, meaning or intent of the provisions of any division, chapter, article or section hereof.'' (See *People* v. *Trout* (1955) 137 Cal.App.2d 794 [291 P.2d 83], holding that § 10004 applies to sections in different titles in the codes.) Disregarding the weight placed in the *Lanham* case upon the fact that the sections mentioned are in different titles, the decision is a sound one. There is no provision anywhere for

the determination by the jury of the place of imprisonment in cases of attempted statutory rape.

Defendant's suggested application of the standard rules of construction (1) that the codes are to be construed as a whole, and (2) that when language is reasonably susceptible of two constructions, ordinarily that construction which is more favorable to the offender will be adopted, does not enable us to write into the statute words that are not there.

In this respect, it should be pointed out that section 664, providing punishment for an attempt to commit a crime, does not relate to punishment actually *imposed* in a particular case, but provides that the punishment for an attempt shall be "for a term not exceeding one-half the longest term of imprisonment *prescribed* upon a conviction of the offense so attempted. ..." (Emphasis added.) Section 264 *prescribes* as the longest term of imprisonment for statutory rape one year in the county jail or 50 years in the state prison. Taking the Penal Code as a whole, it clearly appears that the determination of the punishment for attempted statutory rape (the term of imprisonment) is to be fixed by the judge. There is no ambiguity in section 664 and hence *People* v. *Ralph* (1944) 24 Cal.2d 575 [150 P.2d 401], dealing with construction of ambiguous Penal Code sections, is not applicable.

2. *Sufficiency of Evidence.* (a) Testimony of the prosecutrix.

Defendant contends that Donna's testimony was insufficient and too contradictory to sustain a verdict of guilty. There is no question but that she admitted lying to both the district attorney and to the defense counsel. Her testimony was contradictory, inconsistent and unsatisfactory. Likewise she had told various stories of the night's occurrences. Were the conviction to be considered on her testimony alone, it probably would have to be set aside, although there are many cases holding that conflicts, inconsistencies and even lies in the testimony of an individual witness are to be resolved by the trier of fact. (See *People* v. *Haywood* (1955) 131 Cal. App.2d 259, 261 [280 P.2d 180]: The trier of fact "was entitled to accept as true the testimony of the complaining witness on direct examination rather than the conflicting testimony which she later gave." See also *People* v. *Koontz* (1959) 171 Cal.App.2d 633 [341 P.2d 815].) However, the other evidence in the case shows rather conclusively that that portion of her testimony (which she attempted to repudiate) which showed that defendant attempted to have inter-

course with her that night, was true. The testimony of defendant's niece that defendant was with Donna that night, his denial to her father that he was, the positive showing of the vaginal smear, all amply support that version of the night's occurrences and defendant's guilt. The jury were given adequate cautionary instructions on how to view the testimony of the prosecutrix and on reasonable doubt.

(b) Intent.

 It apparently is defendant's position that there was no evidence that defendant intended or tried to commit rape, in that Donna did not say that defendant made any attempt at penetration, nor that he placed his private parts *in* hers, but only "next" to hers.

In *People* v. *Rupp* (1953) 41 Cal.2d 371, 380 [260 P.2d 1], quoting from *People* v. *Parker,* 74 Cal.App. 540 [241 P. 401], the court stated: " 'The crime of attempt to commit rape upon a girl under the age of consent is compounded of two elements, viz.: the intent to have sexual intercourse with her, and a direct act done towards its consummation but falling short of the execution of the ultimate design. The overt act need not be the last proximate act to the consummation of the contemplated rape.' " Defendant is in error in his contention that unless the attempt to have intercourse is prevented or interrupted by force there can be no offense of attempted rape. The placing of his private parts next to hers, the evidence that Donna's panties were wet after defendant was finished, the finding of spermatozoa, all justified the jury in determining that defendant was attempting to commit rape, even though he did not succeed in his endeavor.

3. *Instructions.*

 At the beginning of an instruction to the effect that an admission by itself is not enough to warrant an inference of guilt, the court said: "Evidence has been received in this case tending to show that on occasions other than this trial the defendant himself made a statement tending to prove his guilt of the alleged crime for which he is on trial." The court was undoubtedly referring to the statement made by defendant to Donna's father to the effect that he had not been out with Donna that night, and also to a statement made by defendant to a policeman to the effect that he was with Donna on that night. As the statement to Donna's father was false and as defendant's statement to the officer placed him with

her, the court's characterization was correct. False denial of being present with her that night, as well as admitting being present, certainly were incriminating statements. Defendant contends that the father's testimony as to the voice over the phone was conflicting and not satisfactory. This was a matter for the jury.

Defendant also contends that because Donna's father had never before heard defendant's voice over the phone there was no foundation for the admission of the conversation with defendant. However, that fact alone would not prevent its admission. A foundation may be laid by circumstances and the contents of the conversation itself.

Donna's father had been at defendant's home looking for him and talking to his wife. Shortly after Donna left defendant's car and came home her father received the phone call of a male voice. The person identified himself as defendant and said, " 'I heard you have been over to my house talking to my wife.' " This was information that would only have been known to defendant, his wife and sister-in-law. Obviously the call was not made by either of the latter two. This was sufficient foundation to leave the question of whether or not defendant made the call, to the jury. " 'The identity of the person may be established by proof of recognition of his voice, *or by other circumstances which satisfactorily indicate the identity of the individual.*' " (*People* v. *Horace* (1954) 127 Cal.App.2d 366, 369 [273 P.2d 923].)

Defendant contends that the court should have instructed of its own motion that the oral admissions of a party should be viewed with caution. Section 2061, Code of Civil Procedure, requires this. Although the court did instruct that an admission is not in itself sufficient to establish guilt, the court nevertheless should have given the cautionary instruction. The failure to give such an instruction has in some cases like *People* v. *Northum,* 115 Cal.App.2d 606 [252 P.2d 686], been held to be reversible error. In other cases, while it was held error not to give the instruction, it was held not to be prejudicial under the facts of the particular case. Each case depends upon its own circumstances. In view of the strong evidence against defendant, and particularly defendant's failure to deny the statements, it is inconceivable that the giving of the cautionary instruction would have changed the verdict. There was no miscarriage of justice in the failure to give this instruction.

#### 4. *Refusal to Grant New Trial.*

 On the motion for new trial defendant presented an affidavit by Donna completely exonerating defendant and accusing a sailor. She stated that she had lied on the witness stand because "I was told I had to testify as to what I said before or be charged with perjury." At the trial she testified that she was not "afraid of the penalty of perjury."

[██] The granting or denial of a motion for new trial on the ground of newly discovered evidence rests in the sound discretion of the court and an appellate court will not interfere except upon a clear showing of an abuse of discretion by the trial court. (*People* v. *Greenwood,* 47 Cal.2d 819 [306 P.2d 427].) The trial judge was presented with a question of fact, whether he should believe Donna's sworn testimony in court or her affidavit. Donna, while admitting telling different stories before the trial, including one exonerating defendant, told, on direct examination, the story incriminating defendant. Even under cross-examination, although admitting that she had told another story before trial, she did not change her testimony. She admitted being in love with defendant. The judge very well could infer that she fabricated the story in the affidavit to try to save him from imprisonment. Moreover, the judge could, and undoubtedly did, weigh the other evidence in the case against Donna's story in the affidavit, to determine what credibility should be given it.

 It has been repeatedly held that where a witness who has testified at a trial makes an affidavit that such testimony is false, little credence ordinarily can be placed in the affidavit, and it is within the judge's discretion whether or not the showing merits the granting of a new trial. (See *People* v. *Poor,* 52 Cal.App.2d 241 [126 P.2d 146] ; *People* v. *Jones,* 89 Cal.App.2d 151 [200 P.2d 65].) There was no abuse of discretion in denying the motion for new trial.

The judgment and order are affirmed.

Tobriner, J., and Sullivan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 9, 1962.