[Crim. No. 8323. Second Dist., Div. Three. July 23, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE THEODORE MUNTON, Defendant and Appellant.

---

[1]The record shows that one of the abutting owners had provided a detour around the barricade.

Gladys Towles Root and Eugene V. McPherson for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Calvin W. Torrance, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Charged in seven counts with violation of section 288a, violation of section 286 (sodomy), and an attempted violation of section 286 of the Penal Code, the defendant, George Theodore Munton, was found guilty in a jury trial on counts I, II and VII. Count I charged a violation of section 288a and count II charged a violation of section 286. The victim in both counts was William Wallace, a boy approximately 17 years of age. Count VII charged an attempted violation of section 286 on Richard Bailey, a boy also approximately 17 years of age. Defendant was found not guilty on counts III, IV, V and VI, which were identical, except as to times, with counts I and II. Defendant's motion for a new trial was denied. New attorneys were substituted for the trial attorney and they moved for a rehearing of defendant's motion for a new trial. This motion was denied. Pursuant to section 5500 et seq. of the Welfare and Institutions Code, and upon the reports of doctors under appointment by the court, the defendant was adjudged a probable sexual psychopath and committed to Atascadero State Hospital. Four months later, upon receipt of a report from the superintendent of the hospital, the defendant was returned to the court and found not to be a sexual psychopath. Defendant's motion for a new trial was renewed and denied. Probation being denied, defendant was sentenced to state prison. He appeals from the judgment and from undescribed "orders" in the case. The purported appeal from the "orders" is dismissed.

Counts I and II charged commissions of the offenses October 20, 1960; counts III and IV alleged offenses committed October 21 and counts V and VI alleged commission of the offenses October 23, all against William Wallace and count VII alleged commission of the offense against Richard H. Bailey November 10, 1960.

Defendant operated the Lyric motion picture theater in Huntington Park in Los Angeles County. About a year prior to October 1960 Wallace had worked for defendant at the theater. Early in October he applied for reemployment. Wallace testified that the offenses charged in counts III, IV, V and VI upon which defendant was acquitted occurred either in the office of defendant at the theater or in a motel on Ventura Boulevard and that the offenses charged in counts I and II were committed at the motel. He testified that he was taken by defendant to the motel at about 1:30 am. on October 20th; defendant registered for himself and another and

obtained a room which he and defendant used and in which the offenses were committed; both remained there until about 11 a.m. when they left together. Defendant was well known to the proprietor of the motel, a Mr. Butler, and had used a room in the motel 18 times during the month of October. Mr. Butler testified to the registration by defendant of himself and another person about 1:30 a.m. and to having seen defendant and Wallace leave the motel together at about 11 a.m.

It is a fair inference that defendant was acquitted upon counts III to VI, inclusive, not because the jury disbelieved the testimony of Wallace but because he was found to be an accomplice and that his testimony was uncorroborated; presumably the convictions on counts I and II were due to the determination of the jury that the testimony of Wallace as to those offenses was sufficiently corroborated.

The contention, first to be considered, that defendant was inadequately represented by counsel and thus deprived of a fair trial, requires a consideration of the showing made by defendant upon his motion for a new trial. Sixteen affidavits were filed in support of the motion. Among them were affidavits by Wallace and Bailey repudiating the testimony they had given at the trial. Upon the hearing of the motion Wallace testified that he had believed it was necessary for him to deny participation in the unlawful acts in order to enlist in the armed services, and he reaffirmed his former testimony. There was no showing that the matters to which the other affidavits related were newly discovered and for this reason, alone, they could not have furnished a ground for granting the motion. (Pen. Code, § 1181.)

The affidavits were filed in support of defendant's contention that he had been deprived of due process in that he had not been adequately represented at the trial. There was a showing by affidavit that defendant's attorney was informed before the trial of the testimony that would have been given by the affiants and that he failed to call several of them as witnesses and failed to elicit in his examination of the others all that they knew that would have been helpful to defendant. The affiants were in the main employees of the defendant and their statements were designed to contradict the testimony of Wallace and Bailey in several particulars. Both Wallace and Bailey had testified that defendant induced them to drink considerable quantities of liquor and that he had

caused them to disrobe and put on only trunks and that they remained in his office for considerable periods of time. The affidavits were generally to the effect that the affiants had never known defendant to use liquor or have it in his office, had never known him to have his office door locked and had never known Wallace to go to defendant's office and remain for more than a very few minutes. Such negative testimony could have made little impression upon the jury. One of the affiants would have testified to facts indicating that Wallace had upon other occasions indulged in unlawful sexual activities with other persons. It is now urged that although defendant's attorney was informed as to the testimony these persons would give he was grossly incompetent and negligent in not calling all of them as witnesses and in not developing the testimony of those who were called in greater detail. The contention that defendant was deprived of a fair trial through the incompetence of his attorney merits no extended discussion. Six of the persons who made affidavits had testified in the trial on defendant's behalf; they testified to the substance of the matters stated in their affidavits. The People's witnesses were vigorously and adequately cross-examined; such defense as defendant had was adequately presented. The showing made by defendant was manifestly inadequate to furnish support for his claim that he was denied his right to a fair trial. (See *People* v. *Moten,* 207 Cal.App.2d 692 [24 Cal.Rptr. 716]; *People* v. *Monk,* 56 Cal.2d 288 [14 Cal.Rptr. 633, 363 P.2d 865]; *People* v. *Prado,* 190 Cal.App.2d 374 [12 Cal.Rptr. 141].)

Moreover, the testimony which defendant claims was not properly developed related to what might or might not have occurred in defendant's office and not to the occurrences in the motel as charged in counts I and II, upon which defendant was convicted. The statements were relevant to the charge in count VII, which we shall discuss later. If defendant could have benefited to some extent through more detailed testimony by these witnesses, it is clear that he suffered no prejudice if their testimony was somewhat abbreviated.

The jury could not have failed to find that at least as to the offenses charged in counts I and II Wallace was an accomplice and as we have said, it was a reasonable inference that they found him to be an accomplice in the commission of the other charged offenses.

Our question is whether we can hold as a matter of law that the testimony of Wallace as to the events occurring on

October 20th was insufficiently corroborated. We cannot say this. The Lyric Theater was located in Huntington Park. The motel on Ventura Boulevard was miles away in the San Fernando Valley. Chatsworth, where defendant's sister resided, is still further away and beyond the motel in question. Culver City is located on the way to Santa Monica at the ocean. It is many miles removed from the location of the motel and is reached by entirely different routes. The significance of these facts appears from the testimony of defendant as to his activities on the night of October 20th. He admitted having taken Wallace to the motel, his only reason being that he wanted to put him up somewhere for the night. Wallace lived but a short distance from the theater. Defendant had an apartment in Beverly Hills but he did not take Wallace to the apartment for the reason that a female friend was using it at the time. He preferred Butler's motel for the reason that he was acquainted with Butler and was accustomed to staying there. He intended to visit his sister in Chatsworth the following morning and thought it would be convenient to pick up Wallace at the motel on his way from his sister's to Huntington Park. He registered for himself as well as for Wallace for the reason that he intended to leave Wallace at the motel but to return there early in the morning in order to shave and shower. He testified that after he had obtained the room he drove to Culver City some time after 2 a.m. in order to loan a woman friend $100, which both he and she testified was given her in cash, for which she gave him a due bill. He remained several hours in her apartment and returned to the motel about 6 a.m. where he shaved and showered, and had breakfast at a nearby café. At about 11 o'clock he drove Wallace back to the theater, then drove to Chatsworth to see his sister and back to Huntington Park. He denied having spent any part of the night in the motel and, of course, denied having committed any unlawful acts. A police officer testified that after the arrest of defendant, when questioned, he denied having taken Wallace to the motel.

██    The question on appeal is whether the corroborating evidence tended to connect defendant with the commission of the crime in such a way as might reasonably have satisfied the jury that the corroboratee was telling the truth. (*People v. MacEwing*, 45 Cal.2d 218 [288 P.2d 257].)  ██  The weight to be given to corroborating evidence is for the jury, whose

verdict will not be disturbed on appeal unless it is clear that on no hypothesis can it stand. (19 Cal. Jur. 2d, Evidence, § 499; *People* v. *Trujillo,* 32 Cal.2d 105 [194 P.2d 681]).

Defendant cites *People* v. *Robbins,* 171 Cal. 466 [154 P. 317], as a case which supports his contention. The defendant, after a tennis game, took a boy into the bathroom to shower; the window blind was drawn, the door locked and the water in the shower was turned on. It was held that these facts provided insufficient corroboration of the testimony of the boy that an unlawful act was committed by the defendant. The facts of the present case are quite different. Defendant had a purpose in taking the boy to the motel. He was well known at the motel and no doubt knew that no questions would be asked by the management. He undoubtedly realized that if he admitted having spent the second half of the night in the room with the boy the jury would be convinced that his purpose was evil. The fact that two men or a man and a 17-year-old boy sleep side by side in a bed does not suggest to the normal mind the commission of immoral acts. It might be the most natural and reasonable thing for them to do. With a clear conscience they would not deem it necessary to deny having slept side by side. But defendant not only denied to the officer having taken the boy to the motel, he went to great pains to prove that after having registered himself and the boy he spent the remainder of the night elsewhere. His explanation that he incurred a greater charge in having registered for two persons for the reason that he intended to return later in the morning to shave and shower did not sound reasonable in view of the fact that he was a regular customer of the motel and a friend of Butler's. The jury could reasonably have concluded that defendant registered for two persons because he intended to remain in the room and that his explanation of not having done so was fabricated. If he had offered an explanation that the jury deemed logical and reasonable, the jury no doubt would have given him the benefit of the doubt and would have believed his denial of having committed unlawful acts. But when he denied to the officer having taken the boy to the motel, and later admitted having done so, and came forward with no logical reason for his conduct and no reasonable account of his actions, it was not unreasonable for the jury to conclude that his purpose throughout was evil and that his conduct and admissions, considered independently, furnished adequate corroboration for the testimony of Wallace. As

previously stated, we hold that the corroborating evidence was sufficient.

At the preliminary examination, Bailey testified to the acts charged in count VII. At the time of trial, he was absent from the state and his testimony at the preliminary was read into evidence. He described the circumstances of the offense charged in count VII. He was 17 years of age. He went to the theater to obtain employment. In the theater office defendant told him that "we" were going to rehearse for the showing of a picture going by the name of "Nude Set." Defendant plied him with about three cups of wine, followed by drinks of whiskey. Defendant persuaded him to take off his clothes and put on a set of trunks. Wallace came in and Bailey put his clothes back on. Defendant again persuaded him to put the trunks on which he did, and persuaded Wallace to get undressed. They then had some more drinks. Defendant and Wallace, acting at the direction of defendant, tied up Bailey with cords. Defendant then struck Bailey a couple of times with a small belt and induced Wallace also to strike Bailey. While Bailey was tied up he lay face down at the direction of defendant. He was fondled by defendant and by Wallace. There was talk about sexual activities and defendant asked Bailey whether he had ever indulged in them. Bailey answered that he had not and did not intend to. While it would appear from the testimony of Bailey that defendant had in mind the commission of violation of section 286, it is also clear that he did not make an attempt to commit the act. Tying Bailey up was not intended to overcome any possible resistance upon his part and no felonious advantage was taken or attempted of Bailey's condition while he was tied. Defendant cannot be punished for what was in his mind. Bailey's testimony disproves the use by defendant of any physical effort which would constitute even a slight attempt to commit a violation of section 286. Tying Bailey up and striking him upon his bare back with a leather belt was a manifestation of a sadistic impulse and a gratification of a form of sexual desire. But it would seem to have been an assault upon Bailey's person distinctly apart in nature and purpose from an effort or attempt to commit the act with which defendant was charged. However evil defendant's intentions were, it is clear from the testimony of Bailey that defendant did nothing that would constitute an attempt to commit the offense for which he was prosecuted upon count VII.

The judgment is affirmed as to the convictions under counts I and II and reversed as to the conviction under count VII.

Ford, J., and Files, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 18, 1963.