[Crim. No. 8717. Second Dist., Div. Three. Oct. 2, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. FRED JOSEPH
LANGLOIS, Defendant and Appellant.

832

H. Clay Jacke for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

FILES, J.—Defendant appeals from a judgment wherein he was convicted of pimping and pandering in violation of sections 266h and 266i of the Penal Code. Count I of the information charged that defendant, knowing Rose Mary Heulett to be a prostitute, derived support and maintenance from the earnings of her prostitution. In count II defendant was charged with having induced her by threats and violence to become an inmate of a house of prostitution. The information further alleged defendant's convictions of three prior felonies.

When the case came on for trial, defendant admitted the priors, waived a jury, and through his counsel stipulated that the cause be tried on the testimony given at the preliminary examination on May 3, 1962, together with any further evidence which either side might choose to produce.

The People rested on the transcript of the preliminary hearing. There Miss Heulett testified that she met defendant in June 1961 and began to live with him. Later he persuaded her to work as a prostitute. Her customary method

of operation was to pick up a man in a café and use defendant's automobile to drive to a "trick house" which had been arranged for by defendant, where the acts of intercourse took place. She gave defendant her earnings, with which he bought personal possessions for himself. Whenever she sought to terminate her work as a prostitute, defendant "would come and get me [and] I would get hit." Eventually, in September 1961, she told defendant she was leaving. He became angry and struck her. She then complained to the police, at which time she "told them everything." A Los Angeles police officer testified that on August 28, 1961, he made a crime report based on statements of Miss Heulett.

Defendant testified that at the time in question he had been "dating" Miss Heulett and that she had sometimes used his automobile; but he denied telling her to become a prostitute, denied arranging for other men to have intercourse with her, denied receiving any money from her, and denied striking her.

Miss Heulett was subpoenaed to appear as a witness at the trial on September 14, 1962, but she did not appear. The trial court issued a bench warrant and offered to continue the matter so that she could be brought in. The judge noted that the defendant was out on bail and thus a continuance would not result in any additional confinement for him. Defendant's attorney stated that he would withdraw his request that Miss Heulett be called. The case was argued and submitted, and the court announced its finding of guilty.

The evidence is clearly sufficient to support the judgment. There is no merit in defendant's argument that Miss Heulett was an accomplice whose testimony, standing alone, would be insufficient under Penal Code, section 1111. In a prosecution under Penal Code, section 266h, the prostitute whose earnings are taken is not an accomplice (*People* v. *Berger,* 185 Cal.App.2d 16 [7 Cal.Rptr. 827]); and under Penal Code, section 266i, the woman who is induced or procured to become a prostitute is not an accomplice (*People* v. *Wilkins,* 135 Cal.App.2d 371, 378 [287 P.2d 555]).

 There is no basis for defendant's contention that he was prejudiced by the question asked him on cross-examination as follows: "Q. Mr. Langlois, have you been convicted of a felony other than these three that you admitted this morning? A. No." The inquiry, apparently made on speculation, was improper (*People* v. *Perez,* 58 Cal.2d 229, 237-240

[23 Cal.Rptr. 569, 373 P.2d 617]), but we cannot believe that the incident could have influenced the judge to defendant's disadvantage in this nonjury trial.

■ Defendant's principal contention is that the trial court abused its discretion in refusing to grant a new trial.

On October 5, 1962, defendant substituted his present attorney in place of the attorney who had tried the case. New counsel then asked for two weeks in which to prepare a motion for a new trial on the ground of newly discovered evidence. Thereafter he produced a typewritten statement dated October 4, 1962, purporting to bear the signature of Rose Mary Heulett. This document stated, among other things: "I love Freddie and I wanted to hurt him because he didn't love me and was going with another girl. . . . I told the police officers a lie, he didn't do anything to me to hurt me. I didn't give him any kind of money at all. . . ." The statement did not assert that she had testified falsely in any other respect. It did not contain any repudiation of her testimony that defendant had arranged for her to work as a prostitute between June and September 1961.

Although the document was neither sworn nor certified under penalty of perjury, the trial judge stated that he would consider it as though it were an affidavit. On October 19, 1962, the motion was argued and submitted and denied.

■ The granting or denial of a motion for a new trial on the ground of newly discovered evidence is a matter within the sound discretion of the trial court. The discretion is that of the trial court, not the reviewing court, and the latter will not interfere unless there is a clear showing of abuse. (*People v. Greenwood,* 47 Cal.2d 819, 821 [306 P.2d 427]; see *People v. Williams,* 57 Cal.2d 263, 270 [18 Cal.Rptr. 729, 368 P.2d 353].)

■ The fact that an important prosecution witness has recanted does not necessarily compel the granting of the motion. In such a case the trial judge is required to weigh the evidence offered in support of the motion, and he may reject it if he deems it unworthy of belief. (*People v. Tallmadge,* 114 Cal. 427 [46 P. 282]; *People v. McGaughran,* 197 Cal.App.2d 6, 17 [17 Cal.Rptr. 121]; *People v. Poor,* 52 Cal. App.2d 241, 243 [126 P.2d 146]; *People v. Lee,* 9 Cal.App.2d 99 [48 P.2d 1003].)

The offer of a witness, after the trial, to retract his sworn testimony is always looked upon with suspicion. (See *People v. Shilitano,* 218 N.Y. 161, 170 [112 N.E. 733, 736]; *United*

*States* v. *Troche* (2d Cir.) 213 F.2d 401, 403.) In 158 American Law Reports 1062 the editors state: "A study of the cases in the original annotations and those decided subsequently indicates that the courts, with their experience with witnesses, generally pay but little regard to the statements of a recanting witness, and only in extraordinary and unusual cases will a new trial be allowed because of the recanting statements."

The record here indicates that Miss Heulett first complained to the police in August 1961. At the preliminary examination nine months later she testified clearly and directly. At the time of the trial (September 14, 1962) defendant refused a continuance for the purpose of obtaining her testimony. Apparently as of that date defendant did not anticipate that she would change her testimony. By her own statement, she was in love with defendant and desired to help him to avoid punishment. This court cannot say the trial court abused its discretion when it concluded that her testimony, rather than the extrajudicial statement, was the truth.

■ Counsel for defendant argues that the court should have called Miss Heulett as its own witness. Counsel did state, during the course of his argument on the motion for a new trial, that Miss Heulett was then in the courtroom. Defendant, however, made no request that she be called to the stand. After the motion had been submitted, and while the court was commenting on the record, defense counsel remarked: "I could put her on the stand now and have her testify." Even at that late hour counsel was not urging that the witness be called. The manner in which the suggestion was made bore out defendant's apparent reluctance to see Miss Heulett back on the witness stand, where she would be subject to the searching examination of the district attorney. Under the circumstances, defendant cannot be heard to say he was prejudiced by the failure of the trial judge to call her.*

---

*This controversy might have been put to rest much earlier, and on a much more satisfactory basis, if the trial judge had taken the time to call Miss Heulett instead of assuming that she would swear to the contents of her unsworn statement. In *People* v. *Munton,* 218 Cal.App. 2d 556 [32 Cal.Rptr. 508], the defendant made a motion for a new trial supported by the affidavit of one of the prosecution's witnesses repudiating the testimony he had given at the trial. Upon the hearing of the motion the recanting witness was called to the stand. There he told how he had been persuaded to make the affidavit, stated that the affidavit was false, and reaffirmed the testimony given at the trial.

836

The order denying the motion for a new trial has been reviewed on the appeal from the judgment (Pen. Code, § 1259). The order itself is not separately appealable (Pen. Code, § 1237). The appeal from the order is dismissed. The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 27, 1963.