Filed 12/4/13  P. v. Marks CA3
Reposted to provide correct docket number in index line

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL MARKS,<br><br>    Defendant and Appellant. | C069757<br><br>(Super. Ct. No. 09F08624) |

A jury convicted defendant Michael Marks of inflicting injury upon a cohabitant resulting in a traumatic injury, assault with a deadly weapon, kidnapping, criminal threat, and false imprisonment by violence or menace, all based on a November 23, 2009 attack

1

against Dena Marks.[1]  The jury also found that defendant knew and reasonably should have known that Dena was "developmentally disabled."

Defendant now contends (1) there is insufficient evidence to support the conviction for criminal threat, and there is also insufficient evidence to support the finding that Dena was developmentally disabled; (2) the trial court had a sua sponte duty to instruct on the lesser crime of attempted criminal threat; and (3) the trial court erred in denying defendant's motion for a new trial.

We conclude (1) substantial evidence supports the conviction for criminal threat, but there is insufficient evidence to establish that Dena was "developmentally disabled" as defined by statute; (2) on this record, the trial court did not have a sua sponte duty to instruct on the lesser crime of attempted criminal threat; and (3) the trial court did not abuse its discretion in denying defendant's motion for a new trial.

We will strike the enhancement based on the finding that Dena was developmentally disabled and otherwise affirm the judgment.

BACKGROUND

Dena told emergency room personnel on November 24 that the prior evening, her boyfriend hit her with his fists, cut her palm with a kitchen knife, hit the back of her head with a board (causing her to lose consciousness), and held her against her will in his mother's house.  Dena identified defendant as her assailant.  She had a bruise on her right cheek, abrasions to her face, a bruise on her left shoulder, and a cut to her right palm. She did not have any bump on her head or mark on her neck.  A chest X-ray and computed tomography (CT) scan of her head and face revealed no fractures or internal injuries.  The emergency room nurse contacted law enforcement authorities.

---

[1] We will refer to members of the Marks family by their first names for clarity.  All dates are from 2009, unless otherwise indicated.

2

City of Sacramento Police Officer Dustin Henderson interviewed Dena at the hospital. Dena again identified defendant as her assailant. She related the following to Officer Henderson:

Around 8:00 or 9:00 p.m. on November 23, defendant told Dena, "[y]ou're gonna die tonight." He barricaded the door to Dena's bedroom and began to punch Dena on her head and face with both of his closed fists. He cut Dena's hand with the blade of a kitchen knife when she put her hands up to stop his strikes. He also grabbed Dena by the neck and choked her. At one point, defendant removed a gun and a razor or box cutter from his pocket and placed them on a dresser.

Defendant beat Dena throughout the evening. Around midnight, he forced her into his car at gunpoint, telling her that his friends had her daughter and he would tell his friends to rape and kill the daughter if Dena did not comply.

Defendant took Dena to a river. He said he was going to drown the demons out of her. He punched her and then hit her in the back of her head with a piece of wood, causing her to lose consciousness.

Defendant then took Dena to his mother's house. He carried her into his bedroom, blocked the bedroom door, and placed Dena in the closet. He hit Dena some more until he got tired.

The next morning, defendant told Dena "to act straight" in front of his mother, otherwise she would not get her daughter back. Defendant's mother took Dena to the hospital when she saw Dena's injuries.

Officer Henderson searched defendant's residence and questioned defendant's mother Virginia Marks. The officer found a pile of clothes behind the door of defendant's bedroom, which was consistent with Dena's statement that defendant put things against his bedroom door to block the door. Virginia initially denied taking Dena to the hospital, but eventually admitted that she drove Dena to the hospital that morning.

Virginia said, in response to the officer's further questioning, "It's my son.  I don't know anything."

Sacramento Police Officer Lisa Nou Khang-Her interviewed Dena by telephone on November 25.  The officer read the statement Dena provided to Officer Henderson verbatim and asked Dena if she wanted to make any changes to the statement.  Dena confirmed the statement was correct, but changed the length of time she had dated defendant.  Dena told the officer defendant assaulted her, the assault began in Dena's home, defendant had a gun, he took her to a river and then to his mother's house against her will, and he continued to hit her there.  Dena said she was afraid defendant would kill her and she was going to stay with her mother until defendant was arrested.

Three days after Dena was assaulted, Sacramento County Deputy Sheriff Corey Newman responded to a report that defendant kidnapped Dena.  Dena's mother Theresa Marks informed the deputy that defendant threatened Dena's family and then grabbed Dena and drove away in his car.

Dena subsequently failed to appear for an appointment to sign a form for Officer Khang-Her, and later told the officer that the kidnapping and assault never occurred.  However, Dena then said the kidnapping and assault occurred, but she did not know who assaulted her.  She claimed defendant was not her assailant and said she did not want to press charges against defendant.

Dena said her injuries were from a fight with another woman.  She also said she did not know what really happened because of her various medical conditions.  Then, she said that a male family member assaulted her and forced her to say defendant was responsible, but she would not say who assaulted her.

Testifying under a grant of immunity, Dena offered yet another story at defendant's preliminary hearing.  Defendant's jury heard this preliminary hearing testimony because the district attorney's office could not locate Dena for the trial, despite its reasonably diligent efforts to find her.  Dena testified at the preliminary hearing that

4

defendant did not assault her. Instead, Terry Stephens, a family friend with whom Dena had been having an affair, assaulted her in his motor home. According to Dena, Stephens slapped and punched her on and off all day, threatened to kill her, and displayed a gun during the assault. Dena said Stephens dropped her off near a hospital the next day and instructed her to blame defendant for her injuries. Dena claimed she did what Stephens told her to do because she was scared about what Stephens might do to her children. Dena also said she was high when Officer Henderson interviewed her, and she was mad at defendant because he left her. She said she sometimes lashed out at him because she was jealous. Dena declared she loved defendant with all her heart, noting that defendant helped her raise her children and he was the father of Dena's 16-year-old daughter.

Dena also testified that she asked defendant to pick her up from her mother's house on November 26 and she left willingly in defendant's car. Theresa likewise told the jury that her report of a kidnapping was based on a misunderstanding. Theresa denied at the trial that defendant threatened Dena or Theresa on November 26.

The prosecution played a recording of a jailhouse telephone conversation between Dena and defendant. The conversation occurred about three months before the start of the trial. Defendant told Dena in the conversation that if she did not go to court, the prosecution will have no case. Defendant said "[d]on't say nothin" and "don't even come in the courtroom."

Regarding the November 23 incident, the jury convicted defendant of inflicting injury upon a cohabitant resulting in a traumatic injury (count one -- Pen. Code, § 273.5, subd. (a)),[2] assault with a deadly weapon (count two -- § 245, subd. (a)(1)), kidnapping (count three -- § 207, subd. (a)), criminal threat (count four -- § 422), and false imprisonment by violence or menace (count five -- §§ 236, 237). The jury found that

---

[2] Undesignated statutory references are to the Penal Code.

Dena was developmentally disabled and defendant knew and reasonably should have known of her condition (§ 667.9).[3] The jury was deadlocked on counts six (criminal threats) and seven (kidnapping), which relate to the November 26 incident, and the trial court declared a mistrial as to those counts. The trial court found the allegation that defendant had suffered three prior serious felony convictions to be true. It denied defendant's motion for a new trial and motion to strike his prior convictions, and sentenced defendant to 25 years to life in prison on count one, a consecutive 25 years to life in prison on count three, two years for the section 667.9, subdivision (b) enhancement [crime against a developmentally disabled victim], and a total of 20 years for the prior strikes, for an aggregate prison term of 22 years plus 50 years to life. The trial court imposed but stayed sentences of 25 years to life on counts two, four and five.

DISCUSSION

I

Defendant contends there is insufficient evidence to support the conviction for criminal threat, and there is also insufficient evidence to support the finding that Dena was developmentally disabled.

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- evidence that is reasonable, credible and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.

---

[3] Section 667.9 says the sentencing enhancement applies when, among other things, the disability or condition is "known *or* reasonably should be known" to the defendant. (Italics added.) Here, the People charged, and the jury found, that Dena's "disability and condition was known *and* reasonably should have been known" to defendant. (Italics added.)

6

[Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) Reversal on the ground of insufficiency of the evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support . . .' " the jury's finding. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

A

We turn first to defendant's contention that there is insufficient evidence to support his conviction for making a criminal threat.

To prove a criminal threat, the prosecution must establish all of the following: (1) the defendant willfully threatened to commit a crime which will result in death or great bodily injury to another person, (2) the defendant made the threat with the specific intent that the statement be taken as a threat, even if there is no intent of actually carrying it out, (3) the threat was, on its face and under the circumstances in which it was made, "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) the threat actually caused the person threatened to suffer sustained fear for his or her safety or the safety of his or her immediate family, and (5) the threatened person's fear was reasonable under the circumstances. (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.) Defendant claims the prosecution failed to present evidence supporting the last three elements of the crime.

Regarding the third element, substantial evidence in the record supports the finding of an unequivocal, unconditional and immediate threat against Dena. Defendant told her: "You're gonna die tonight." Defendant claims the statement was merely an angry rant, but he put his threat immediately into action. After making the statement, defendant barricaded the door and began beating and choking Dena. He cut her hand

7

with a kitchen knife.  The words defendant spoke and the circumstances surrounding his statement demonstrated that his statement was so unequivocal, unconditional, immediate, and specific as to convey a gravity of purpose and an immediate prospect of execution of the threat.  (§ 422, subd. (a); *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1348.)

Nonetheless, regarding the fourth element, defendant asserts there was no evidence that Dena experienced sustained fear.  He notes that the fear cannot be momentary, fleeting, or transitory.

But there was substantial evidence of sustained fear.  Dena told Officer Henderson that during the assault in her bedroom she was crouched in a corner of the room. Defendant beat and terrorized Dena for hours.  At the hospital the next morning, Dena was tearful and very anxious.  She worried that defendant would "come and get her." The next day, Dena was still afraid defendant would kill her.  The jury could reasonably deduce from this evidence that defendant's November 23 threat to kill Dena actually caused Dena to be afraid for a period of time that was not momentary, fleeting, or transitory.  (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.)

As for the fifth element, defendant notes that the fear must be reasonable under the circumstances.  On this record, however, the jury could fairly conclude that Dena's fear was reasonable.  (*People v. Fierro, supra,* 180 Cal.App.4th at pp. 1348-1349; *People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.)

B

We turn next to defendant's claim of insufficient evidence to support the jury's finding that Dena was "developmentally disabled."

A defendant who commits the crime of kidnapping (§ 207) against a person who is developmentally disabled must receive a two-year enhancement for each violation if the defendant knew or reasonably should have known of the disability and the defendant has

8

a prior conviction for specified offenses, which includes first degree burglary.[4] (§ 667.9, subds. (a)-(c).) "Developmentally disabled" is defined as a severe, chronic disability of a person, which is (1) attributable to a mental or physical impairment or a combination of mental and physical impairments, (2) likely to continue indefinitely, and (3) results in substantial functional limitation in *three or more* of the following areas of life activity: (a) self-care, (b) receptive and expressive language, (c) learning, (d) mobility, (e) self-direction, (f) capacity for independent living, and (g) economic self-sufficiency. (§ 667.9, subd. (d).)

Defendant does not dispute that Dena had "a number of physical and mental ailments," including the loss of a leg. But defendant claims there was insufficient evidence to establish that Dena had substantial functional limitation in *three* of the life activity areas listed in section 667.9.

The Attorney General counters that in addition to an amputated leg, Dena also had congestive heart failure, kidney failure, asthma, neuropathy, heart attacks and strokes. The Attorney General asserts that Dena was on numerous medications, had limited mobility, and had to be taken to the hospital on many occasions.

There was evidence that Dena was an individual with one or more disabilities and that she experienced serious medical conditions, but defendant is correct that there was an insufficient showing of substantial functional limitation in at least three of the enumerated life activity areas.

The Attorney General points out that Dena said defendant took care of her every day. However, there was no evidence establishing what kind of care defendant provided for Dena. At the time of the assault, Dena maintained a residence that was separate from

---

[4] The jury convicted defendant of one count of kidnapping. The trial court found defendant was previously convicted of first degree burglary, a serious felony under the three strikes law. Defendant received a two-year enhancement under section 667.9.

9

defendant's residence. Although defendant's mother took Dena to the hospital and to medical appointments occasionally, there was no evidence that Dena was incapable of caring for herself or living independently.

In addition, the emergency room doctor who conducted a standard psychiatric exam of Dena on November 24 said Dena exhibited normal judgment. Dena was able to tell emergency room personnel what happened to her. Officer Henderson observed that Dena was lucid, seemed to be thinking clearly, and appeared to understand his questions. Dena was able to give Officer Henderson a detailed statement.

Moreover, the recorded jailhouse conversation between Dena and defendant indicated that Dena was capable of communicating with a landlord about renting a house and figuring out how she was going to pay rent and pay defendant's attorney. There was no evidence regarding Dena's economic self-sufficiency.

Even if the evidence established substantial functional limitation in the area of mobility, there was insufficient evidence of substantial functional limitation in at least two more of the life activity areas enumerated in the statute -- self-care, receptive and expressive language, learning, self-direction, capacity for independent living or economic self-sufficiency.

On this record, there was insufficient evidence to support the imposition of the section 667.9 enhancement. Accordingly, we will strike the enhancement.

II

Defendant also claims the trial court had a sua sponte duty to instruct on the lesser crime of attempted criminal threat. He argues the trial court had such a duty because the prosecution did not introduce evidence that defendant's threat actually caused Dena to suffer sustained fear.

Defendant is correct that a trial court has a sua sponte duty to instruct on lesser necessarily included offenses supported by substantial evidence, if the evidence raises a question as to whether all of the elements of the charged offense are present (*People v.*

10

*Lopez* (1998) 19 Cal.4th 282, 287-288), irrespective of whether the instruction is consistent with the defendant's theory of the case. (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149.) But as we explained in part IA *ante*, there was substantial evidence from which the jury could reasonably find that defendant's November 23 threat actually and reasonably caused Dena to experience sustained fear. Accordingly, the trial court did not have a sua sponte duty on this record to instruct on attempted criminal threat.

## III

Defendant further contends the trial court erred in denying his motion for a new trial.

Defendant's motion for a new trial was based on a posttrial notarized declaration by Dena which stated: "To whom it may concern I Dena Marks am very sorry for all the trouble I put Michael Marks threw by lieing on him First of all Mr. Marks never hit me I had hurt myself and cut my hand as well I was on a high dose of pain killers ant Fentenal patches and also street drugs I was totaly outa control I thought he used me and went back to his x wife so I was very hurt and with the drugs and my deppresson it all turned to anger and not let him be with any other women but me Im sorry for lieing Please forgive my actions."

The trial court denied defendant's motion, concluding that the declaration was not credible, hearing yet another explanation from Dena would add little to the case, and admission of the declaration would not change the result on retrial.

" ' " ' "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears." ' " ' " (*People v. Howard* (2010) 51 Cal.4th 15, 42-43.) In ruling on a motion for a new trial based on newly discovered evidence, the trial court considers the following factors: whether (1) the evidence was newly discovered, (2) the evidence was not cumulative, (3) admission of the evidence

11

could render a different result probable on a retrial of the cause, (4) the party could not with reasonable diligence have discovered and produced the evidence at the trial, and (5) these facts were shown by the best evidence of which the case admits. (*Id.* at p. 43.) The trial court may also consider the credibility of the evidence in order to determine whether its introduction in a new trial would render a different result reasonably probable. (*Ibid.*) Each case is judged on its own facts. (*Ibid.*) And the trial court presumes the verdict is correct. (*People v. Davis* (1995) 10 Cal.4th 463, 524.)

The fact that an important prosecution witness has recanted does not necessarily compel the granting of a motion for a new trial. (*People v. Langlois* (1963) 220 Cal.App.2d 831, 834.) In fact, a posttrial retraction is looked upon with suspicion. (*Ibid.*) In such a case, the trial court weighs the evidence offered in support of the motion, and the trial court may reject the recantation if it is unworthy of belief. (*Ibid.*)

Here, the trial court determined that Dena's declaration was not worthy of credence. It pointed out that Dena was eager to help defendant. She recanted her statement to police and blamed Terry Stephens for her injuries at the preliminary hearing. When defendant was held to answer despite her preliminary hearing testimony, she absented herself from the trial after she and defendant discussed how her nonappearance would help defendant's case. "Conveniently or miraculously, notwithstanding an outstanding bench warrant and her failure to appear [at the trial], after the verdict, she reappears in short order, with yet a third story of what happened in the case." The trial court said the statements Dena provided on November 24, under stress or excitement, were more reliable and trustworthy.

The trial court was well within its discretion to find Dena's posttrial declaration not credible. (*People v. Delgado* (1993) 5 Cal.4th 312, 328-329 [posttrial statement by a witness that she, not defendant, was responsible for the victims' injuries lacked credibility in light of the witness's "obvious continued attachment to defendant" and other evidence contradicting her posttrial statement]; *People v. Langlois, supra,*

12

220 Cal.App.2d. at pp. 834-835 [posttrial recantation by prosecution witness not credible where witness claimed to be in love with defendant and desired to help him avoid punishment].) Dena told medical personnel and police officers, close to the time of the attack, that defendant was responsible for her injuries. Her report was corroborated in part by defendant's mother and evidence in defendant's bedroom. The statement by Dena's mother that defendant was "crazy" because he thought Dena was cheating on him provided a possible motive for the November 23 attack. Dena changed her story after she had contact with defendant on November 26. Consistent with her professions of love for defendant, all of the stories Dena told after November 26 exonerated defendant. Moreover, two days after the jury rendered verdicts against defendant, Dena contacted defendant's attorney and offered to provide a notarized statement confessing that her injuries were self-inflicted and defendant "never laid a finger" on her.

The trial court also found Dena's posttrial declaration to be cumulative, because the jury already heard Dena recant her complaint against defendant and blame someone else for the attack, and already heard that Dena had lied. The record supports these findings. Additionally, there was evidence presented at defendant's trial that Dena was heavily medicated and she was motivated by jealousy when she first reported the assault. Hearing those facts again would not likely render a different result at a retrial.

Defendant claims Dena's injuries were not consistent with her report of a beating, but were instead consistent with self-inflicted injuries. However, the emergency room doctor who treated Dena testified as an expert on emergency medicine and indicated that Dena's injuries were consistent with Dena's statements at the hospital.

On this record, the trial court did not abuse its discretion in denying the motion for retrial.

DISPOSITION

The section 667.9 enhancement is stricken.  The judgment is affirmed in all other respects.  The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation a certified copy of a corrected abstract of judgment.


                                                                 MAURO           , J.


We concur:


             RAYE           , P. J.


             HOCH           , J.