574 So.2d 921 (1990)
Terry Drew KING
v.
STATE.
8 Div. 371.
Court of Criminal Appeals of Alabama.
September 21, 1990.
Rehearing Denied November 16, 1990.
Certiorari Denied February 15, 1991.
*922 Fulton S. Hamilton, Huntsville, for appellant.
Don Siegelman, Atty. Gen., and N.H. Williams, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 1900372.
TAYLOR, Presiding Judge.
The appellant, Terry Drew King, was convicted of two counts of rape in the first degree, a violation of § 13A-6-61, Code of Alabama 1975, and two counts of sexual abuse in the first degree, a violation of § 13A-6-66, Code of Alabama 1975. Appellant was sentenced to two terms of life imprisonment on the rape counts and was sentenced to two 20-year terms on the sexual abuse counts, all of which were to run concurrently.
The victim, a four-year-old girl, testified that on October 29, 1982, she was told by her father, the appellant, to come to her bedroom. The victim testified that the appellant pulled her panties down, pulled his pants down and then laid on top of her. She further testified that the appellant then placed his "ding-dong" in her "kitty cat." (The victim referred to a penis as a "ding-dong" and a vagina as "kitty cat.") The victim's mother was not at home when these events took place. Only the victim and her brother were at home with their father at the time.

I
Appellant initially argues that the trial court erred in denying his motion for judgment for acquittal at the close of the State's case. He cites several reasons why there was insufficient evidence to convict him of the offenses charged in the indictment. Appellant first contends that the State did not prove venue. The appellant states that this is an essential element of proof for the State. Initially, we note that this was never brought to the attention of the trial judge, and no adverse ruling was made. Appellant's counsel made no motion concerning lack of venue after the close of the State's case, nor was lack of venue stated as a reason in counsel's written motion for judgment of acquittal.
However, even had this argument been brought to the attention of the trial judge, appellant would not prevail. The record contains numerous references to locations in the City of Huntsville. The victim's mother gave her address as Huntsville, Officer Blakemore mentioned the City of *923 Huntsville on several occasions, and Dr. Andrew Donbro stated that he treated the victim at the Humana Hospital emergency room in Huntsville. From these references, the jury could reasonably infer that the offenses took place in the City of Huntsville, Madison County. "Venue may be proven by circumstantial evidence as well as by direct evidence." Lofton v. State, 515 So.2d 137, 140 (Ala.Cr.App.1987). As this court stated in Coleman v. State, 423 So.2d 276 (Ala.Cr.App.1982), "In a criminal case, proof of venue is sufficient if it can be reasonably inferred by the jury from the fact and circumstances adduced." Coleman, 423 So.2d at 279.

II
Appellant next argues that the State failed to prove the elements of the offenses charged in the indictment. Appellant was charged with two counts of rape in the first degree and two counts of sexual abuse in the first degree. The indictment reads as follows:
"TERRY DREW KING, whose name is unknown to the Grand Jury other than as stated, a male, did engage in sexual intercourse with [a child], a female, who was less than twelve years of age, he, the said, TERRY DREW KING, whose name is unknown to the Grand Jury other than as stated, being sixteen years or older, in violation of § 13A-6-61 of the Code of Alabama, against the peace and dignity of the State of Alabama.
"Count Two:
"The Grand Jury of said County charge, that before the finding of this indictment, TERRY DREW KING, whose name is unknown to the Grand Jury other than as stated, a male, did engage in sexual intercourse with [a child], a female, by forcible compulsion, in violation of § 13A-6-61 of the Code of Alabama, against the peace and dignity of the State of Alabama.
"Count Three:
"The Grand Jury of said County charge, that before the finding of this indictment, TERRY DREW KING, whose name is unknown to the Grand Jury other than as stated, he being sixteen years of age or older, did subject to sexual contact [a child], who was less than twelve years of age, in violation of § 13A-6-66 of the Code of Alabama, against the peace and dignity of the State of Alabama.
"Count Four:
"The Grand Jury of said County charge, that before the finding of this indictment, TERRY DREW KING, whose name is unknown to the Grand Jury other than as stated, did subject [a child] to sexual contact by forcible compulsion, in violation of § 13A-6-66 of the Code of Alabama."
Appellant argues that the state failed to prove counts two and four as alleged in the indictment, since, he says, no forcible compulsion was shown. Appellant contends that there was no evidence of any resistance.
"`The force necessary to be used, to constitute the crime of rape, need not be actual, but may be constructive or implied. An acquiescence to the act obtained through duress or fear of personal violence, is constructive force, and the consummation of unlawful intercourse by the man thus obtained would be rape.'"
Flanagan v. State, 533 So.2d 637 (Ala.Cr. App.1987), quoting from Weatherford v. State, 369 So.2d 863 (Ala.Cr.App.), writ denied, 369 So.2d 873 (Ala.1979), cert. denied, 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 91 (1979).
As Judge McMillan stated in Parrish v. State, 494 So.2d 705 (Ala.Cr.App.1985): "When the issue of sufficiency of the evidence is raised in a sexual assault case, questions involving resistance ... must be viewed `in the frame of the age of the assaulted girl.'" Parrish, 494 So.2d at 710. Whether forcible compulsion existed is a question of fact for the jury to decide after looking at the totality of the circumstances. See Flanagan, supra; Parrish, supra.
In the instant case the four-year-old victim testified that her father, the appellant, pulled her pants down and that she tried to *924 pull them back up; she said she was crying and that her father was pushing her hands away. This is sufficient evidence for the issue of forcible compulsion to be presented to the jury for its determination.
Appellant also argues that there was no evidence of penetration, and thus, he should be acquitted of counts one and two in the indictment. The record reads as follows:
"QWhen you were laying on the bed like this, did your daddy touch your kitty cat?
"AYes.
"QWhat did he touch your kitty cat with?
"AHis ding-dong.
"QAnd can you tell me what he did with his ding-dong?
"A(Witness demonstrates by placing male doll on top of female doll.)
"QHe put it in your kitty cat; is that what you're trying to show me?
"A(No response.)
"QWhy don't you tell me what he did.
"A(Witness further demonstrates with dolls.)
"QHe put his ding-dong in your kitty cat?
"A(Witness nods head in the affirmative.)
"QCan you tell me what that felt like....?
"AWater.
"QCome back up here and sit down; okay. (Witness complies.)
"QIt felt like water?
"AYeah."
Appellant contends that the correct form was not used to show that penetration occurred. As this court stated in Swint v. State, 455 So.2d 285, 286 (Ala.Cr.App.1984): "[The] nature of the penetration that is essential for a rape conviction need not be proved in any particular form of words." "Whether an actual penetration is accomplished is a question of fact to be determined by the jury." Rowe v. State, 421 So.2d 1352, 1356 (Ala.Cr.App.1982); see also, Jackson v. State, 390 So.2d 671 (Ala. Cr.App.), writ denied, 390 So.2d 675 (Ala. 1980).
In the instant case, the jury not only had the testimony of the four-year-old victim but also that of Mrs. King, a representative of the Department of Human Resources. Mrs. King testified that the victim told her that the appellant put his "ding-dong" in her "kitty cat." Dr. Theresa Spalding who examined the victim after the incident testified that the normal vaginal opening of a four-year-old girl is 4 millimeters and that the victim's was 7 millimeters. There was sufficient evidence for the matter to be presented to the jury.

III
The appellant next argues that the trial court erred in denying his motion for a new trial based on the use of allegedly perjured testimony. Appellant contends that the victim's mother perjured herself at trial and that the jury's verdict would have been different if her perjured testimony had not been used.
In the instant case, an attorney, not the one who represented the appellant at trial, testified at the hearing on appellant's motion for new trial that the mother of the victim, who was also the appellant's wife, came to his office approximately a week after the appellant was found guilty and made a statement to him saying that she told the victim to lie in court; he read that statement into evidence. He also stated that the appellant's wife gave him an affidavit that she wanted filed in the court. This affidavit, however, was not signed. The judge paraphrased the events in his written order:
"The attorney stated to the Court, in summary, that Mrs. King told him that the defendant was in fact not guilty of the acts of which he had been convicted; that she had been intimidated into testifying for reasons other than the fact that she believed him to be guilty of any such acts against her daughter."
As our Supreme Court recently stated in Ex parte Frazier, 562 So.2d 560, 569-70 (Ala.1989):

*925 "In order to grant a motion for new trial alleging perjured testimony, the trial court must be reasonably well satisfied 1) that testimony given by a witness at trial was false; 2) that there is a significant chance that had the jury heard the truth, it would have reached a different result; 3) that the evidence tending to prove the witness's perjury has been discovered since the trial; and 4) that that evidence could not have been discovered before or during the trial by the exercise of due diligence."
Recantation of testimony by a witness is normally not cause for a new trial and in most instances is given "little regard." See Peterson v. State, 426 So.2d 494, 497 (Ala.Cr.App.1982). "The granting of a new trial `rests in the sound discretion of the trial court and depends largely on the credibility of the new evidence.'" Snider v. State, 473 So.2d 579 (Ala.Cr.App.1985). Error does not occur when the trial court denied a motion for new trial based on evidence that would not have been admissible at a new trial. See Smitherman v. State, 521 So.2d 1050 (Ala.Cr.App.1987).
In the instant case the evidence that the trial judge had before it when ruling on the motion was an unsigned affidavit allegedly given by the victim's mother and the appellant's wife. The victim's mother, however, did not testify at the hearing on the motion for new trial. Moreover, the trial court also was put on notice during the testimony of the victim's mother that her credibility was at issue. At trial, the following occurred during the examination of Mrs. King:
"QHave you told people that you put [the child] up to saying all of this?
"AHave I told people? Carol said I told her that I made it up because I didn't want Terry around any more, that I wanted to be free of him.
"QWell, did you tell Carol that?
"AI don't know. I probably did. I probably have because I was going through something to where I didn't remember some things I said.
"QYou don't remember all the things you said?
"AI was going through a point where I didn't care about nothing.
"QWell, were you feeling that way before you went to the food stamp office with your mother?
"AYes. At that time, yes.
"QWell, did you tell [the child] to say all of these things?
"AI don't know if I did or not."
Mrs. King was not present at the hearing on the motion for new trial. All the trial judge had was an unsigned affidavit. The trial judge was in the best position to determine the reliability of the witnesses. "A decision on a motion for new trial rests largely within the discretion of the trial court, and, in reviewing such decision, the appellate court will indulge every presumption in favor of the correctness thereof." Moore v. State, 457 So.2d 981, 989 (Ala.Cr. App.1984).
A similar issue was faced by the trial court in People v. McGaughran, 197 Cal. App.2d 6, 17 Cal.Rptr. 121 (Cal.Dist.Ct.App. 1961), in which the California District Court of Appeals stated that "the trial judge was presented with a question of fact, whether he should believe [the recanter's] sworn testimony in court or her affidavit." The court further said that "where a witness who has testified at a trial makes an affidavit that such testimony is false, little credence ordinarily can be placed in the affidavit." McGaughran, 197 Cal.App.2d at 17, 17 Cal.Rptr. at 128. See also State v. Harris, 428 S.W.2d 497 (Mo.1968).
The trial court was faced with a credibility issue. No error was committed in denying the appellant's motion for new trial.

IV
The appellant next argues that his conviction should be reversed because the state introduced evidence of prior sexual conduct. Specifically, he argues that the admission of evidence of the appellant's use of petroleum jelly before masturbation and sexual intercourse showed a prior sexual habit and was inadmissible under the rules of evidence. Mrs. King testified that on the day of the rape that the appellant *926 removed the petroleum jelly from the living room and took it to the bedroom. The appellant himself testified that he used it that day. He contends that the use of petroleum jelly has no connection to the crimes charged in the indictment.
As the State argues in its brief:
"[A] person's habit is admissible in a criminal trial as tending to prove his conduct on a particular occasion. It is submitted that these decisions are sound because human beings are the creatures of, and in large measure slaves to, their habits."
C. Gamble, McElroy's Alabama Evidence § 42.01(3) (3d ed. 1977).

V
Appellant next argues that the trial court erred in not allowing him the opportunity to question the victim about her younger brother's touching her. Specifically, that when they took baths together, he would touch her between her legs. Appellant contends that the trial court stated prior to trial that such evidence would violate the rape shield statute and thus would be inadmissible. The record reflects the fact that the trial court made no ruling on this evidence prior to trial. The court stated:
"THE COURT: Let's see how the evidence falls on that and just let's approach it slowly as we get into that area, and we'll have an in camera hearing after that. I would like to hear what the State's evidence is, and then what you intend to place on in rebuttal.
"If we just take it just purely coldly as it stands right now, I do think it falls within the Rape Shield Statute. I mean, there's only one exception, and that's prior conduct with the accused. So we'll do that.
"We really haven't settled a whole lot of anything. When we get into these areas, I would appreciate either of you telling me that you wish to either take whatever witness we have on the stand on voir dire or you wish to have an in camera hearing before we get into too much blurting out in front of the jury on some of these things."
The trial judge did not overrule the appellant's motion concerning introduction of evidence about her younger brother touching the victim. When this issue came up at trial, the following occurred:
"QDid your mother ever fuss at you for you and [the brother] having gotten in the bathtub together?
"A [victim]No.
"QWell, now, did you ever have [the brother] touch you where you go to the bathroom?
"ANo.
"QDid your mother ever fuss at [him] for touching you where you go to the bathroom?
"ANo.
"DEFENSE COUNSEL: I'm going to object to this line of questioning.
"THE COURT: Sustained."
Defense counsel did not ask to take the witness on voir dire or to have an in camera hearing regarding this issue. However, defense counsel was given great discretion in questioning the victim's mother about the victim's relationship with her brother. She stated that he would poke at the victim because her anatomy was different from his.
Appellant contends that he was not given an opportunity to explain the victim's abnormal sized vaginal opening. This area was dealt with in depth with the victim's mother. Dr. Spalding stated that the condition of the victim's vaginal opening would not likely be caused by one person's jabbing at another. Accordingly, no error occurred.

VI
The appellant further argues that the trial court's supplemental instruction when the jury had reached an impasse was unlawful. The court gave the following supplemental instruction to the jury:
"Since it appears that up until this time you have been unable to reach a unanimous verdict, I would like to say a few things to you, not by any means to reprimand or scold you, but to merely explain more fully your role as jurors so *927 that this increased understanding may possibly break the impasse which you seem to have reached.
"While undoubtedly the verdict of a jury must represent the opinion of each individual juror and must not be a mere acquiescence in the conclusion of his or her fellows, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by a comparison of views and by arguments among jurors.
"It certainty cannot be the law that each juror should not listen with deference to the arguments, and even with a distrust of his or her own views if he or she finds a large majority of the jury making a judgment of the case different from his or her own.
"A juror should not go to the jury room with a blind determination that the verdict shall represent his or her opinion of the case at that moment, or that he should close his ears to the arguments of men and women who are equally as honest and intelligent as himself. Rather one should enter the jury room with a disposition to be convinced by the arguments of others as well as to convince others by his or her arguments.
"Ladies and gentlemen, neither I nor anyone else in this courtroom knows the nature of your conflict, or the relative numbers of you on the various sides of it. But permit me to admonish you to reach a verdict if you may in good conscience do so, for this is, in fact, your duty as the jury in this case. It is desirable and important to reach a verdict; and it is your duty to do so if it is possible.
"You are urged to make every effort to reach a verdict consistent with your conscience. You should lay aside mere pride of judgment or opinion. You should examine your differences in a spirit of openness, fairness and candor. Reason together over any differences that you have and harmonize them if possible. You should have a proper respect for each other's opinion, and you should listen to each other's arguments. Do not adhere to an opinion merely through stubbornness.
"Consider the great expense and time involved in this trial and the time and expense which another trial would involve. Just as it is the duty of the majority to consider the views of the minority, so it is also the duty of the minority to consider the views of the majority.
"A jury is a deliberative body, and each juror should hear the arguments made upon them by the evidence. If there is a disparity of opinion, you should confer together paying a proper respect to each other's opinions and listening to each other's arguments to the end of reaching a verdict. This can be done oftentimes by presentation and discussion of the contrary views. If the majority are of one opinion, the jury may take that fact into consideration in your deliberations. A juror dissenting from the majority should consider whether a doubt in his or her mind is a reasonable one when it makes no impression upon the minds of so many other jurors equally honest, intelligent and sincere, who have heard the same evidence with the same intention with an equal desire to arrive at the truth and under the sanction of the same oath.
"While a minority should, cannot and will not be coerced by the Court into agreement with a majority, a minority should nonetheless seriously ask themselves whether they may not reasonably and ought not to doubt the correctness of a judgment which is concurred in by most of those with whom they are associated.
"All right. That is all that I have to say to you at this time. I will ask you to retire to the jury room and resume your deliberations of this case. All right. Thank you very much."
As this court stated in McMorris v. State, 394 So.2d 392 (Ala.Cr.App.1980), writ denied, 394 So.2d 404 (Ala.1981), cert. denied, 452 U.S. 972, 101 S.Ct. 3127, 69 L.Ed.2d 983 (1981), "The general rule in Alabama has been that it is not improper *928 for the trial court to urge upon the jury the duty of attempting to reach an agreement or verdict as long as the judge does not suggest which way the verdict should be returned." 394 So.2d at 403. An "Allen Charge" or "Dynamite Charge" is permissible if it is not coercive. See Franklin v. State, 502 So.2d 821 (Ala.Cr.App.1986), writ quashed, 502 So.2d 828 (Ala.1987). The trial court may also make reference to the expense of a new trial. See Wiggins v. State, 429 So.2d 666 (Ala.Cr.App.1983). We find that the trial court's charge was not coercive. Thus, no error occurred in this instance.

VII
The appellant also contends that several items were withheld during discovery. Specifically, he states that a discovery motion was made and that the state made no mention of mental health notes; he says that these notes could have helped him to impeach the victim. Specifically, he argues that the prosecutor's conduct resulted in prejudice to him. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Our Supreme Court stated in Ex parte Dickerson, 517 So.2d 628 (Ala.1987):
"In order to establish a Brady violation, the defendant must establish the following elements: 1. that the prosecution suppressed the evidence; 2. that the evidence was of a character favorable to the defense; and 3. that the evidence was material. Kennedy v. State, 472 So.2d 1106 (Ala.1985)."
Dickerson, 517 So.2d at 630.
The appellant has failed to meet the requirements of Brady, supra. Initially, he has not shown that the prosecutor suppressed the evidence. The State made the following response to the appellant's motion:
"In an effort to accommodate both you and Dr. Andy Donbro, I have scheduled a meeting for us on Thursday, November 17 at 8:30 a.m. in my office. Please be advised that Dr. Donbro will speak freely about this case. No recordings of his statements, however, will be permitted.
"Regarding your request to meet with Dr. Spalding and to see [the victim], after considerable thought, I have concluded that I am unable to arrange for either. I will, however, provide you with copies of Dr. Spalding's reports and laboratory findings, pursuant to your discovery request."
If a violation of the discovery order occurred, and the record does not support a conclusion that it did, appellate counsel could have availed himself of the remedies for noncompliance provided for by Rule 18, A.R.Crim.P.Temp. As to the other prongs of the Brady requirements, the appellant has not proved that the evidence was favorable to him, or that it was material.
Appellant also argues that the victim did not tell the truth on the stand. The appellant alleges that the victim did not answer in the affirmative when asked if she had told anyone else about the incident besides Karen Hall and Joan Barrett and that the victim withheld the name of one individual whom she had told about the occurrence. He states that her trial testimony regarding this point was false. The credibility of witnesses is a question left to the jury.

VIII
Appellant next contends that his verdict was unconstitutional. Specifically, he argues that the jury should not have been permitted to find him guilty of all four counts contained in the indictment, when each count arose out of a single event, and because sexual abuse in the first degree is a lesser included offense of rape in the first degree. For these reasons, appellant contends, the trial judge erred in sentencing him under four different counts. We agree. Appellant's convictions violate the double jeopardy clause of the Fifth Amendment.
The appellant was indicted for two counts of rape in the first degree, one with a child less than twelve years of age, § 13A-6-61(a)(3), Code of Alabama 1975, and the other sexual intercourse by forcible compulsion, § 13A-6-61(a)(1). He was also indicted for two counts of sexual abuse in *929 the first degree, one with a child less than twelve years of age, § 13A-6-66(a)(3), Code of Alabama 1975, and the other sexual contact by forcible compulsion, § 13A-6-66(a)(1).
No mention was made at trial concerning an election between the charges listed in this indictment. This issue was raised for the first time in appellant's motion to set aside the verdict and for a new trial. This is sufficient to preserve this issue for appellate review.
Initially, we must determine whether an individual may be convicted of two counts contained in the same statute. As our Supreme Court stated in Sisson v. State, 528 So.2d 1159 (Ala.1988), "[T]he two subsections of a similar statute were merely alternative methods of proving the same crime, and therefore, did not constitute separate offenses." According to Sisson, the appellant could not be convicted for two counts of both rape or two counts of sexual abuse.
Next, we must determine whether sexual abuse in the first degree is a lesser included offense of rape in the first degree. If sexual abuse in the first degree is a lesser included offense of rape in the first degree, the appellant could not constitutionally be convicted of both offenses arising out of the same act.
Section 13A-1-9, Code of Alabama 1975, states that an offense is a lesser included offense of another if:
"(1) It is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged; or
"(2) It consists of an attempt or solicitation to commit the offense charged or to commit a lesser-included offense; or
"(3) It is specifically designated by statute as a lesser degree of the offense charged; or
"(4) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest, or a lesser kind of culpability suffices to establish its commission."
Section 13A-6-61, Code of Alabama 1975, states:
"(a) A male commits the crime of rape in the first degree if:
"(1) He engages in sexual intercourse with a female by forcible compulsion; or
"....
"(3) He, being 16 years or older, engages in sexual intercourse with a female who is less than 12 years old."
Section 13A-6-66, Code of Alabama 1975, states:
"(a) A person commits the crime of sexual abuse in the first degree if:
"(1) He subjects another person to sexual contact by forcible compulsion; or
"....
"(3) He, being 16 years old or older, subjects another person to sexual contact who is less than 12 years old."
We recognize that sexual abuse in the first degree requires intent, which is not required for rape in the first degree. That alone does not mean that sexual abuse in the first is not a lesser included offense of rape in the first degree. Several decisions by this court imply that sexual abuse in the first degree is a lesser included offense of rape in the first degree. See Young v. State, 453 So.2d 1074 (Ala.Cr.App.1984); Lewis v. State, 439 So.2d 1357 (Ala.Cr.App. 1983); Myers v. State, 401 So.2d 288 (Ala. Cr.App.1981). We see no reason to depart from this theory.
After evaluating the appellant's convictions in light of the above cases, we find that the appellant could not be convicted of sexual abuse in the first degree and rape in the first degree, since sexual abuse in the first degree is a lesser included offense of rape in the first degree. Nor could he constitutionally be convicted of two counts of the same statute. "The Double Jeopardy Clause ... protects against multiple punishments for the same offense. [citation omitted]. Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d *930 187 (1977). This is no way implies that if there were more than one instance of the complained of conduct the appellant could not be convicted under each statute. However, the evidence in the instance case is clear that only one act took place. Thus, the appellant could constitutionally only be convicted of one count instead of the four counts of which he was convicted here.
For the reasons discussed in part VIII of this opinion, this case is remanded to the circuit court with instructions that the trial court vacate three of the appellant's convictions and sentences and file a return with this court within a period of time not to exceed 90 days. The three convictions and sentences to be vacated shall be determined by the trial judge.
REMANDED WITH INSTRUCTIONS.
All the Judges concur except BOWEN, J., concurs specially with opinion.
BOWEN, Judge, concurring specially,
I concur in the opinion of the majority. I make the following observations on the jeopardy issue presented in Part VIII of that opinion. The record in this case leaves no doubt that a single act was relied upon to establish appellant's violation of four separate statutory provisions: rape by forcible compulsion; rape of a female under 12 years old; sexual abuse by forcible compulsion; and sexual abuse of a female under 12 years old. See Part VIII of the opinion of the majority. I believe that appellant was separately convicted and sentenced four times for the same offense. His convictions and sentences violate the double jeopardy clause of the Fifth Amendment to the United States Constitution; Article I, section 9 of the Alabama Constitution of 1901; and Ala.Code 1975, § 13A-1-8(b). The appellant properly preserved the issue for this court's review.
The guarantee against twice being placed in jeopardy for the same offense protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Appellant's convictions and sentences concern the third of these guarantees.
The test announced in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), has historically been used to determine whether two offenses are the "same" for double jeopardy purposes "`in the context of multiple punishments imposed in a single prosecution.'" Grady v. Corbin, ___ U.S. ___, ___, 110 S.Ct. 2084, 2090-91, 109 L.Ed.2d 548 (1990) (quoting Garrett v. United States, 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985)). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Blockburger, 284 U.S. at 304, 52 S.Ct. at 182.
Under a strict "statutory elements" analysis, appellant's four convictions "pass" the Blockburger test, and do not constitute the "same offense." Each statutory provision requires proof of a fact that the other statutory provisions do not require. The offense named in Count I of the indictment (first degree rape of a female under 12 years old) requires proof of the ages of both the accused and the victim, plus proof that the victim was female, plus proof of a consummated act of sexual intercourse. See Ala.Code 1975, § 13A-6-61(a)(3). No other crime for which appellant was indicted requires proof of all these facts. The crime charged in Count II (first degree rape by forcible compulsion) requires proof that the victim was female, plus proof of a completed act of sexual intercourse, plus proof of forcible compulsion. See Ala.Code 1975, § 13A-6-61(a)(1). No other offense of which appellant stands convicted statutorily requires proof of all these elements. The offense outlined in Count III (first degree sexual abuse of a person under 12 years old) requires proof of the ages of both the accused and the victim, plus proof of "sexual contact." See Ala.Code 1975, § 13A-6-66(a)(3). "Sexual contact" is explained *931 elsewhere in the definitional section for "Sexual Offenses" as follows:
"SEXUAL CONTACT. Any touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party."
Ala.Code 1975, § 13A-6-60(3) (emphasis added). From the emphasized portion of this definition, it is apparent that the offense of sexual abuse includes an intent element not required for the offense of rape. Rape requires an act of sexual intercourse, defined by our legislature as follows:
"SEXUAL INTERCOURSE. Such term has its ordinary meaning and occurs upon any penetration, however slight; emission is not required."
Ala.Code 1975, § 13A-6-60(1). No intent accompanying the act of sexual intercourse need be proved for the offense of rape. Thus, it appears that no other offense of which appellant was convicted statutorily requires proof of the "intent to gratify sexual desire," plus the ages of the accused and the victim, as required by § 13A-6-66(a)(3), the provision on which Count III of the indictment was based. The crime charged in Count IV (first degree sexual abuse by forcible compulsion) requires proof of sexual contact plus forcible compulsion, elements not required by any other statutory provision under which appellant was indicted. See Ala.Code 1975, § 13A-6-66(a)(1).
Thus, if this court were to confine its "same offense" analysis to the Blockburger "elements" test alone, it would have to conclude that appellant's right not to be placed in double (or here, quadruple) jeopardy was not violated. However, the Alabama Supreme Court has explicitly rejected a strict "elements" approach to the lesser-included/same offense determination, and has implicitly recognized the Blockburger test as a "floor" rather than a "ceiling" for "same offense" definitions. See Sisson v. State, 528 So.2d 1159 (Ala.1988); Ex parte Jordan, 486 So.2d 485 (Ala.1986); McKinney v. State, 511 So.2d 220 (Ala.1987).
In Sisson, the court construed two DUI provisions, §§ 32-5A-191(a)(1) and (a)(2), which would have "passed" the Blockburger test because each required an element of proof not required by the other, to be "different methods of proving the same offense" charged in one statute. 528 So.2d at 1162 (emphasis added). The court held that when "two subsections of a ... statute [are] merely alternative methods of proving the same crime, [they do] not constitute separate offenses." Id. See also Ex parte Hightower, 443 So.2d 1272, 1274 (Ala.1983) (subsections of sexual misconduct statute containing mutually exclusive elements charged "the same crime under a different set of facts") (emphasis in original) (quoting House v. State, 380 So.2d 940, 942 (Ala.1979).
Under Sisson alone, the appellant's permissible convictions decrease from four to two, since he was charged with the commission of offenses proscribed in alternative subsections of both the rape and the sexual abuse statutes. Therefore, using only the Sisson reasoning he could, at most, be convicted of one rape offense and one sexual abuse offense.
The rationale of Ex parte Jordan, 486 So.2d 485 (Ala.1986), further reduces appellant's permissible convictions to one. In Jordan, the Alabama Supreme Court held that the determination of what is a lesser included offense does not depend on a reading of the elements of two criminal statutes "in abstract terms," 486 So.2d at 488, but on the facts of the particular case in light of what was charged in the indictment. The Jordan court relied on § 13A-1-9(a), which provides the following:
"A defendant may be convicted of an offense included in an offense charged. An offense is an included one if:
"(1) It is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged; or
"(2) It consists of an attempt or solicitation to commit the offense charged or to commit a lesser included offense; or
*932 "(3) It is specifically designated by statute as a lesser degree of the offense charged; or
"(4) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interests, or a lesser kind of culpability suffices to establish its commission."
The court then held:
"Under the proper application of subsection (1) of the lesser-included-offense statute to these criminal statutes, the issue is simple: Can all or fewer than all of these facts establishing the commission of [the greater offense] also establish the commission of [the lesser offense]?....
"Under the proper application of subsection (4), the issue is whether the two criminal statutes differ under these facts only in that [the lesser offense] contemplates a less serious injury or risk of injury or requires a lesser kind of culpability."
Ex parte Jordan, 486 So.2d at 488 (emphasis in original). If we use the Jordan interpretation of §§ 13A-1-9(a)(1) and (4) to determine whether sexual abuse in the first degree is a lesser included offense of rape in the first degree, then all the mutually exclusive statutory elements of the four offenses for which appellant was convicted can be discounted. Instead, we must ask whether all or fewer than all of the facts establishing the offense of first degree rape by forcible compulsion at appellant's trial also established first degree rape of a female under 12 years old, first degree sexual abuse by forcible compulsion, and first degree sexual abuse of a person under 12 years old. The answer is yes, since the State proved a completed act of intercourse by force upon a four-year-old girl, and the intent to gratify sexual desire could be inferred from the act itself. See Ex parte Cofer, 440 So.2d 1121, 1124 (Ala. 1983). The intent element of first degree sexual abuse need not be explicitly proved, but may be "inferred by the jury from the act itself." Nails v. State, 549 So.2d 572, 574 (Ala.Cr.App.1989); Hawkins v. State, 549 So.2d 552, 555 (Ala.Cr.App.1989); Phillips v. State, 505 So.2d 1075, 1079 (Ala.Cr. App.1986). Accord, McGahee v. State, 554 So.2d 454, 465 (Ala.Cr.App.), affirmed, 554 So.2d 473 (Ala.1989); Parker v. State, 406 So.2d 1036, 1039 (Ala.Cr.App.), cert. denied, 406 So.2d 1041 (Ala.1981).
Following Jordan, for purposes of § 13A-1-9(a)(4), it is clear that first degree rape and first degree sexual abuse differ, under the facts established at appellant's trial, only in that sexual abuse contemplates a less serious injury or risk of injury to the same person, or requires a lesser kind of culpability than first degree rape.
In McKinney v. State, 511 So.2d 220 (Ala.1987), the Alabama Supreme Court observed that the determination of what is the "same offense" for purposes of allowing multiple convictions based on a single act is a question for the Alabama courts to decide in light of Alabama statutes (specifically §§ 13A-1-8 and 15-3-8), subject to constitutional (jeopardy) limitations. The court noted Alabama's historic reliance on the Blockburger test, but implied that Blockburger was a threshold aid to statutory construction rather than the ultimate test of legislative intent. Compare Missouri v. Hunter, 459 U.S. 359, 367, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983) (Blockburger is a "`rule of statutory construction,' and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent.") (emphasis omitted). In order to decide whether a single act could be the basis of multiple prosecutions, the McKinney court found it pertinent to review "the `description of the unit of prosecution within the substantive criminal law statutes.'" 511 So.2d at 224-25. The court held that a single act resulting in multiple victims could be prosecuted as an offense against each victim.
Here, we are not dealing with multiple victims but, arguably, with multiple injuries to the same victim. The pertinent inquiry, however, may well be similar to the one used in McKinney. Has the victim of a rape sustained an additional injury from sexual contact leading up to or incident to *933 the rape? Few would argue with the proposition that a defendant who murders his victim by a series of blows to the head cannot be convicted for each assault-blow as well as for the murder. Section 13A-1-9(a)(4) explains why not, and it provides a principal reason why the appellant should not be similarly convicted here. Just as the hypothetical assault differs from murder "only in the respect that a less serious injury or risk of injury to the same person... or a lesser kind of culpability suffices to establish its commission," sexual abuse differs from rape in this case. The legislature has determined that sexual touching is a less serious injury than rape; it has designated first degree rape as a Class A felony, § 13A-6-61(b), and first degree sexual abuse as a Class C felony, § 13A-6-66(b). From the victim's standpoint, leaving her assailant unpunished for the comparatively minor sexual contact injury but punishing him severely for the rape does not fail to vindicate the victim's interests. Compare the law in Alabama as it existed prior to McKinney: Leaving the accused unpunished for all but one murder arising from a single homicidal act with several victims failed to vindicate the interests of many.
Under the Sisson "same offense" approach, appellant was convicted and sentenced four times for two offenses. Under both the Jordan calculus and the McKinney analysis, appellant was convicted and sentenced four times for one offense. Leaving aside for the moment, however, Sisson, Jordan, and McKinney, there are two additional reasons why I believe appellant's multiple convictions should be prohibited here. Those reasons are (1) the principle of stare decisis and the necessity for judicial consistency in construing like statutes in a like manner, and (2) a commonsense interpretation of the legislative purpose underpinning the intent requirements for all the sexual offenses in Title 13A, Chapter 6, Article 4 of our Criminal Code.
This court has previously indicated that first degree sexual abuse is a lesser included offense of first degree rape. See Sasser v. State, 494 So.2d 857 (Ala.Cr.App.1986), and Young v. State, 453 So.2d 1074 (Ala. Cr.App.1984). See also Williamson v. State, 570 So.2d 722 (Ala.Cr.App.1990) (assault in the third degree is a lesser included offense of rape).
In Sasser, the accused, who was convicted of first degree rape, argued on appeal that the trial court's jury instructions "on the lesser offense of sexual abuse in the first degree were deficient." 494 So.2d at 860. We did not answer that argument with the statement that sexual abuse is not a lesser offense of rape; we reviewed the oral charge, in pertinent part, and held that "[t]he trial judge did not err" in its coverage and definition of the offense of sexual abuse. Id.
In Young, the accused, who was charged with first degree rape and convicted of attempted rape in the first degree, argued on appeal that the trial court erred by instructing the jury on attempted rape, claiming "that the crime is either rape in the first degree or sexual abuse in the first degreebut not attempted first degree rape." 453 So.2d at 1075. Once more, we did not take the opportunity to reject the argument that sexual abuse was an included offense of rape. We reviewed the facts, specifically the accused's confession that "he was trying to penetrate the child when her uncle discovered them," id., and held the following: "Under these facts, the jury could have convicted Young of rape or attempted rape in the first degree or sexual abuse in the first degree." Id. (emphasis in original).
Furthermore, this court has held that sexual abuse in the first degree is a lesser offense of sodomy in the first degree, Hutcherson v. State, 441 So.2d 1048, 1052 (Ala.Cr.App.1983), despite the fact that sexual abuse requires the intent to gratify sexual desire and sodomy, like rape, does not. See Mitchell v. State, 473 So.2d 591, 595 (Ala.Cr.App.1985).
In Mitchell, the accused argued "that sexual gratification is an essential element of the crime of sodomy in the first degree." 473 So.2d at 595. This court reviewed the proscription of the sodomy statute against *934 "deviate sexual intercourse," which is defined as follows:
"[a]ny act of sexual gratification between persons not married to each other, involving the sex organs of one person and the mouth or anus of another."
Ala.Code 1975, § 13A-6-60(2). We held:
"Appellant's argument that sexual gratification is an element of the offense charged is without merit. A close reading of the statute reveals that the legislature intended for the act itself to be condemned. Sexual gratification is merely a definitional component of the crime and not an essential element which must be proved at trial."
Mitchell v. State, 473 So.2d at 595 (emphasis in original).
There is no principled reason to treat the offense of sodomy differently from the offense of rape, insofar as holding that sodomy encompasses sexual abuse as an included offense but rape does not, when both sodomy and rape proscribe the prohibited act alone without regard to the actor's intent, and both sodomy and rape thereby differ in the same way from the crime of sexual abuse, which does include an intent requirement.
As Mitchell v. State points out, although sexual gratification is a definitional component of the act constituting the offense of sodomy, it is not an intent requirement. Neither is there an intent requirement for rape. Title 13A, Chapter 6, Article 4 of our Criminal Code defines six sex offenses, namely: rape, sodomy, sexual misconduct, sexual abuse, indecent exposure, and enticement. With the exception of rape, sodomy, and sexual misconduct (which is defined in reference to either rape or sodomy), all of these offenses proscribe conduct performed with an intent characterized as to "gratify sexual desire" or "lascivious." Why did the Alabama legislature omit the "sexual gratification" or "lascivious" intent requirement from only rape and sodomy? The answer is clear. One engages in an act of sexual intercourse under the circumstances set out in the rape statutes, or in an act of deviate sexual intercourse under the circumstances outlined in the sodomy statutes "at his peril." See §§ 13A-6-61 and 13A-6-62 (Commentary at 201); §§ 13A-6-63 and 13A-6-64 (Commentary at 205). That is, all acts of sexual intercourse or deviate sexual intercourse accomplished by force or perpetrated on a child of tender years are proscribed, without regard to intent. See Hooper v. State, 106 Ala. 41, 17 So. 679 (1895). Society, speaking through the legislative body, deems these acts sufficiently harmful to justify criminalizing their performance alone, irrespective of intent. Cf. United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922) (drug seller guilty of violating federal Narcotics Act even though he was unaware product contained opium). The rape and sodomy statutes thus approach "mala prohibita" or strict liability offenses in their outright prohibition of certain conduct regardless of mental culpability. See generally § 13A-2-3 (Commentary at 27).
In contrast, not all "sexual contact" or genital exposure, or enticement of children is or could, constitutionally, be proscribed under the other sexual offense statutes. "Touching of the sexual or other intimate parts of a person not married to the actor" frequently occurs when people are jostled together on a crowded bus, when someone performs artificial respiration, or when a doctor examines a patient. Genital exposure is common in locker rooms, and, strictly speaking, enticement of children into a vehicle is practiced everyday by harried parents ready to leave the mall.
The foregoing innocent conduct is distinguished from the crimes of sexual abuse, indecent exposure, and enticement by an intent requirement. See Pierce v. State, 484 So.2d 506, 510 (Ala.Cr.App.1985) (When accused conceded that he may have touched his daughter's breast but disclaimed any "sexual intent" and argued that he merely "hugged her," this court observed, "[T]he intent to gratify sexual desire ... differentiate[s] common affectionate behavior between a father and daughter from the criminal act of sexual abuse.").
*935 Thus, in order to draft a constitutional statute, the legislature had to include an intent requirement for the offense of sexual abuse. The fact that it did not include an intent requirement for rape does not demonstrate legislative intent to make rape and sexual abuse separate offenses for jeopardy purposes.
On the contrary, had the legislature intended that rape and sexual abuse not be treated as the "same" offense, it could have demonstrated this purpose by requiring a different intent for rape than it set out for sexual abuse. Cf. Ex parte Washington, 448 So.2d 404, 408 (Ala.1984) (Reckless murder and "universal malice" murder are not lesser included offenses of each other because they require mutually exclusive intents). Instead, the legislature simply made intent immaterial in a rape prosecution. If one accused of rape conceded the act, but argued that his intent was not sexual, but violent and demeaning, and the jury so found, he would still be guilty of rape. Cf. McGahee v. State, 554 So.2d 454, 465 (Ala.Cr.App.), affirmed, 554 So.2d 473 (Ala.1989). In McGahee, the accused argued, in prosecution for murder during the course of sexual abuse in the first degree, that his intent was to "punish or demean" and not to gratify his sexual desire. 554 So.2d at 465. In light of the accused's acts and statements during the offense, this court found his argument "ludicrous." Id. It is at least conceivable, however, that one accused of sexual abuse might, under some set of facts, succeed with that argument. A rape defendant, however, would always lose, because his intent, no matter how bizarre or unbelievable, is simply irrelevant. Rape and sexual abuse could not, therefore, have been intended by the Alabama legislature to be mutually exclusive offenses based solely on the absence of an intent requirement in the former and the presence of an intent requirement in the latter.
The organizational format of the rape and sexual abuse statutes are identical. "Section 13A-6-66 provides felony penalties for `sexual contact' under circumstances generally corresponding to that required for first degree rape, § 13A-6-61 and first degree sodomy § 13A-6-63." Ala.Code §§ 13A-6-66 and 13A-6-67 (Commentary at 212). The three subsections of the rape and sexual abuse statutes outline the same alternative ways of committing the crimes and there are two degrees of each named offense. In my judgment, the legislature recognized sexual abuse as a potential lesser offense of rape despite the fact that sexual abuse requires a specific mens rea and rape does not.
The State argues that appellant did not preserve the jeopardy issue for this court's review. While the appellant should have requested an instruction informing the jury that it could convict of either rape or sexual abuse but not both, his failure to do so does not preclude our review since he did move to set aside the verdict on the ground that his four convictions constituted only a single offense. (R. 438).
In Ball v. United States, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985), the accused, a convicted felon, was prosecuted under separate statutory provisions for receiving and for possessing the same firearm. The Supreme Court held that "Congress did not intend to subject felons to two convictions; proof of illegal receipt of a firearm necessarily includes proof of illegal possession of that weapon." 470 U.S. at 862, 105 S.Ct. at 1672 (emphasis in original). The Court concluded:
"We emphasize that while the Government may seek a multiple-count indictment against a felon for violations of §§ 922(h) and 1202(a) involving the same weapon where a single act establishes the receipt and possession, the accused may not suffer two convictions or sentences on that indictment. If, upon the trial, the district judge is satisfied that there is sufficient proof to go to the jury on both counts, he should instruct the jury as to the elements of each offense. Should the jury return guilty verdicts for each count, however, the district judge should enter judgment on only one of the statutory offenses."
Ball v. United States, 470 U.S. at 865, 105 S.Ct. at 1673-74 (emphasis added). The Ball Court's approval of submitting all *936 counts reasonably supported by the evidence to the jury (notwithstanding the fact that some of the counts charge the "same offense" for jeopardy purposes) because of the trial court's ability of enter judgment on the verdict, that is constitutional, dovetails with Alabama procedure as outlined in Ala.Code 1975, § 13A-1-8(b). That section provides:
"When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:

"(1) One offense is included in the other, as defined in section 13A-1-9; or
"(2) One offense consists only of a conspiracy or other form of preparation to commit the other; or
"(3) Inconsistent findings of fact are required to establish the commission of the offenses; or
"(4) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct."
In light of Ball and § 13A-1-8(b), it is clear that appellant's post-verdict motion preserved the jeopardy issue for our review. Harris v. State, 563 So.2d 9 (Ala.Cr. App.1989), is not authority for the proposition that appellant failed to preserve the jeopardy issue. In that case this court held that the double jeopardy claim was waived because the accused pleaded guilty with the knowledge that his jeopardy objection had been denied and without reserving the right to appeal the jeopardy issue.
Harris involved guilty pleas to four counts of an indictment, which did not show on their face that they charged the same offense. This court pointed out that we could not consider facts shown in the appellate brief but unsupported by the record to invalidate convictions resting on voluntary guilty pleas to facially valid counts of an indictment. In United States v. Broce, 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989), the United States Supreme Court held the same thing:
"Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes....
"....
"The respondents here ... pleaded guilty to indictments that on their face described separate conspiracies. They cannot prove their claim [that the agreements were part of a single conspiracy] by relying on those indictments and the existing record. Indeed, ... they cannot prove their claim without contradicting those indictments, and that opportunity is foreclosed by the admissions inherent in their guilty pleas."
488 U.S. at 570, 576, 109 S.Ct. at 763, 766.
Appellant was convicted and sentenced for four offenses when, constitutionally, he can be guilty of only one.
"Having concluded that Congress did not intend petitioner's conduct to be punishable under both §§ 922(h) and 1202(a), the only remedy consistent with the congressional intent is for the District Court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions. The remedy of ordering one of the sentences to be served concurrently with the other cannot be squared with Congress' intention. One of the convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense.
"The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma *937 accompanying any criminal conviction. Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment."
Ball v. United States, 470 U.S. at 864-65, 105 S.Ct. at 1673 (emphasis in original) (citations omitted).